**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Norman KIDD, Defendant–Appellant.**

**No. 93–5127.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 29, 1993.

Decided Dec. 27, 1993.

**31**

Hunt Lee Charach, Federal Public Defender, Charleston, WV, argued, for defendant-appellant.

Victoria Boros Major, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and WILLIAMS, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

**OPINION**

WILKINSON, Circuit Judge:

The question in this case is whether incriminating statements obtained after a defendant's indictment can be included as relevant conduct for purposes of sentencing on the charges in that indictment. *See* U.S.S.G. § 1B1.3. We hold that because the evidence here related to new criminal activity, it was not obtained in violation of appellant's Sixth Amendment rights and, thus, was admissible at the sentencing hearing. We therefore affirm the judgment of the district court.

I.

Appellant Norman Kidd began using and selling crack cocaine in 1991. In November 1991, government informants started making tape-recorded purchases of cocaine base from Kidd. Between November 1991 and May 1992, Kidd made at least seven sales to such informants. These drug transactions resulted in an indictment charging Kidd with one count of conspiracy to possess with the intent to distribute cocaine base under 21 U.S.C. § 846, and five counts of cocaine possession and distribution in violation of 21 U.S.C. § 841(a). Kidd was arrested on July 3, 1992. Three days later, counsel was appointed.

On July 6, Kidd was released on a personal recognizance bond on the condition that he refrain from drug use and submit to random drug testing. Kidd subsequently tested positive for cocaine on August 17, September 10, and September 18. Additionally, on August 26, Brian Trent, an undercover informant

who had never before made a drug purchase from Kidd, contacted Kidd and made a tape-recorded purchase of .15 grams of cocaine base. This post-indictment transaction led the government to obtain a superseding indictment which included the August 26 transaction as a separate distribution count and extended the conspiracy period to August 26, 1992.

On October 30, 1992, pursuant to a plea agreement, Kidd pled guilty to count two of the superseding indictment—distribution of cocaine base in November 1991—and the government moved to dismiss the remaining counts.

At sentencing, Kidd objected to the presentence report's references to the August 26 drug transaction on the ground that the informant's contact with him violated his Sixth Amendment right to counsel. Kidd challenged the report's inclusion of cocaine sold on August 26, which increased the total weight from 1.89 grams to 2.04 grams and thereby changed his offense level from 18 to 20. Kidd also filed an objection to the report's recommendation to deny a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. The district court overruled both objections. Subsequently, Kidd was sentenced to thirty-three months imprisonment, and ordered to pay a $1,000 fine and a $50 special assessment.

Kidd now appeals the district court's rulings on both the Sixth Amendment and the acceptance of responsibility issues. We address each issue in turn.

## II.

### A.

Kidd contends that the government informant violated his Sixth Amendment right to counsel by contacting him and purchasing drugs from him after he had been indicted on drug distribution charges. Kidd further argues that the district court should have remedied this constitutional violation by excluding the post-indictment drug transaction from its analysis of relevant conduct for sentencing purposes.

We disagree. The Sixth Amendment right to counsel prohibits the government from deliberately eliciting incriminating evidence from an accused "after he ha[s] been indicted and in the absence of his counsel." *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). However, as the Supreme Court recently made clear, "[t]he Sixth Amendment right ... is offense-specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced...." *McNeil v. Wisconsin,* 501 U.S. 171, ——, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). Accordingly, only those "incriminating statements pertaining to *pending charges* are inadmissible at the trial of those charges." *Maine v. Moulton,* 474 U.S. 159, 180, 106 S.Ct. 477, 489, 88 L.Ed.2d 481 (1985) (emphasis added). Applying this principle, the Court has found that government investigations of new criminal activity for which an accused has not yet been indicted do not violate the Sixth Amendment right to counsel. *See McNeil,* 501 U.S. at ——, 111 S.Ct. at 2207–08; *Illinois v. Perkins,* 496 U.S. 292, 299, 110 S.Ct. 2394, 2398, 110 L.Ed.2d 243 (1990) (holding that a government interrogation of an accused did not violate the Sixth Amendment because "no charges had been filed on the subject of the interrogation").

As of August 26, 1992, Kidd's right to counsel had attached only with respect to the drug distribution and conspiracy offenses for which he had been indicted. The government informant did not attempt to elicit, and did not receive, information regarding these offenses during the August 26 transaction. This fact alone distinguishes this case from those relied upon by Kidd. *See Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Mitcheltree,* 940 F.2d 1329 (10th Cir.1991); *United States v. Terzado–Madruga,* 897 F.2d 1099 (11th Cir.1990). In each of those cases, the government's investigation of post-indictment misconduct produced new evidence regarding the *pending* charges. *See Moulton,* 474 U.S. at 176–77, 106 S.Ct. at 487–88; *Mitcheltree,* 940 F.2d at 1343; *Terzado–Madruga,* 897 F.2d at 1110. By contrast, neither Kidd nor the government informant

even mentioned Kidd's pending charges at the post-indictment drug transaction. Rather, the government was investigating Kidd's *new* criminal activity in an effort to obtain information regarding an offense for which no charge had yet been filed, and thus for which no Sixth Amendment right had been invoked.[1]

■ Kidd nonetheless contends that the August 26 offense was so "closely related" to the pending charges that the right to counsel attached to it. He contends that the government cannot fairly claim to be investigating new criminal conduct where the charged and uncharged offenses are "so inextricably intertwined" or "extremely closely related" that the right to counsel for one offense cannot be separated from the other offense. *United States v. Cooper*, 949 F.2d 737, 743 (5th Cir.1991); *see also United States v. Hines*, 963 F.2d 255, 257 (9th Cir.1992). Kidd argues that the August 26 drug transaction was "closely related" to the pending charges because it, like the charged offenses, was a drug possession and distribution offense.

Kidd's argument, however, misconstrues the nature of any "related offense" exception to the offense-specific character of the Sixth Amendment. In order to fall within this exception, the offense being investigated must derive from the same factual predicate as the charged offense. Here, although the August 26 transaction involved the same type of crime as the charged offenses, it involved a different purchaser-informant, occurred at a different time, and took place in a different location. In short, the August 26 offense was factually distinct from, and independent of, the prior distribution offenses for which the Sixth Amendment right had been invoked. *See Hines*, 963 F.2d at 257 (holding that a charged firearm possession offense is not closely related to an uncharged firearm pos-session offense because the "place, time, and person involved were all different").

The mere fact that both the pending charges and the new offense involved drug distribution does not mean the right to counsel attached to both. To hold otherwise would essentially permit charged suspects to commit similar crimes with impunity. In this case, such a holding would hamper authorities in investigating whether Kidd had violated the terms of his personal recognizance bond. The Sixth Amendment does not create a sanctuary for the commission of additional crimes during the pendency of an indictment. Indeed, "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." *Moulton*, 474 U.S. at 180, 106 S.Ct. at 489. We hold therefore that the Sixth Amendment did not prohibit the government from gathering evidence regarding the August 26, 1992, transaction through an informant.[2]

### B.

There being no Sixth Amendment violation here, we can find no other legal impediment to the introduction of the evidence at defendant's sentencing. The August 26 offense falls squarely within the sentencing guidelines definition of "relevant conduct." The guidelines provide that offense levels for drug distribution offenses must include "all acts and omissions ... that were part of the *same course of conduct* or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (emphasis added). Here, Kidd's post-indictment offense was of the same nature as the charged offenses— drug distribution. Moreover, Kidd assumed

---

1. The fact that the indictment contained a conspiracy charge does not change our conclusion that the August 26 investigation did not involve any pending charges. The time period for the pending conspiracy charge expired in May 1992, three months before the post-indictment offense occurred.

2. Because Kidd pled guilty in this case, there was no occasion for the government to use any evi-dence regarding his August 26 activities at a trial on the offenses for which Kidd earlier had been charged. Our holding does not imply that such a use would be permissible. *See Moulton*, 474 U.S. at 180, 106 S.Ct. at 489 (prohibiting use of statements obtained after indictment in the absence of counsel "at the *trial* of those charges") (emphasis added).

the role of distributor in both the pre- and post-indictment offenses. The August 26 cocaine distribution plainly was part of the "same course of conduct" as the offense of conviction under § 1B1.3(a)(2). *See United States v. Williams,* 977 F.2d 866, 870 (4th Cir.1992) (noting that the "same course of conduct" standard requires the nature of the defendant's acts and his role in the offenses to be similar).

■ Kidd, however, maintains that it is inconsistent to hold that the post-indictment offense was not "closely related" to the charged crimes for Sixth Amendment purposes, but constituted the "same course of conduct" for relevant conduct purposes. Any inconsistency, however, is more semantic than real. The Sixth Amendment inquiry is controlled by factual and temporal relationships among the offenses, while the guidelines inquiry is additionally governed by such things as the nature of the crimes and the defendant's role in them. There can be no inconsistency where the purposes of both the constitutional and sentencing guidelines provisions have been served. The Sixth Amendment seeks to protect against government circumvention of an accused's right to counsel after adversary proceedings have commenced, and there was no such circumvention here. The guidelines provision seeks to determine a sentence that reflects a defendant's real offense conduct, and that was also accomplished here. Kidd's post-indictment drug transaction constituted both a new crime which the government was entitled to investigate, and relevant conduct which a sentencing judge was entitled to consider.

Finally, this result is consistent with the congressional mandate that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a [federal] court ... may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. To withhold relevant and reliable information from a sentencing judge in a case where no constitutional violation was committed would amount to an unprecedented application of exclusionary rules. Such rules have traditionally served to deter governmental misconduct, *see Unit-*ed *States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984), but there has been no such misconduct here.

### III.

Kidd next challenges the district court's denial of a downward adjustment for acceptance of responsibility under § 3E1.1. Kidd argues that his guilty plea, admission of relevant conduct, cooperation with his probation officer, and voluntary participation in rehabilitative measures mandated an acceptance of responsibility award as a matter of law. We find no merit in this challenge. "[T]he district court's decision not to reduce the offense level [on acceptance of responsibility grounds] will not be disturbed unless clearly erroneous." *United States v. Curtis,* 934 F.2d 553, 557 (4th Cir.1991). Given Kidd's continued use and illegal distribution of cocaine after his indictment and plea agreement, we do not think that the district court erred in denying credit for acceptance of responsibility.

### IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*